Good morning, may it please the court. My name is Rudolph Alejo on behalf of Petitioner and Appellant Taylor. I'd like to continue the morning's theme by focusing on the eyewitness identification issue. I'd first like to note some of the facts that are not in dispute in this case. So both parties agree that the victim was robbed and kidnapped at gunpoint and held for several hours, had We both agree that, excuse me, the victim identified a co-defendant still well, shortly after the crime. And then we agree that the victim was thereafter shown three lineups to identify the driver. In the first lineup, he identified someone else. In the two remaining lineups, which contained a photo of a petitioner, he failed to identify anyone and said, none of the looked like the driver. It wasn't until the preliminary hearing, four months later, that while petitioner was in jail garb sitting next to co-defendant still well, that the victim first made the identification. So the State Court of Appeal and the District Court found that the preliminary hearing identification was unduly suggestive, but nevertheless reliable. And that's really the issue in And I think the parties before me kind of identified the factors. I would like to just draw this court's attention to its prior case, Green versus Loggins, because I think that case bears a striking, a series of striking similarities to this case. In Green also, the victim was shown, or the witness in Green was shown, two separate lineups which contained photographs of the defendant. And in that case, in both instances, the witness failed to identify the defendant, just like this case. And it wasn't until several months later, four months in that case too, I believe, actually three months, that the witness happened to see the defendant inside of a holding cell in jail. And then for the first time, once he heard the defendant's name, appeared to recognize him. And this court found that, that unlike the other cases that talk about a witness's reliability, a reputation for reliability, his failure to, I think, identify the defendant in fairly administered lineups, kind of... Counsel, one of the problems you're going to have with, that you're going to have to confront in the case that you've cited, too, is Green versus Loggins, is that this is a pre-AEDPA case. Correct. Our case is governed by AEDPA, and we do have a reasoned decision from the California Court of Appeals that appears to side all of the relevant Supreme Court authority. Absolutely. So what's the problem with what the California Court of Appeals did here? Well, as the District Court found, the Court of Appeals considered evidence of guilt in determining the reliability of the subsequent identification. And that you're just referring, is that footnote four, is that what you're referring to? Indeed, yes. Well, isn't it quite relevant that the very same Echo sweatshirt, close or exact match, was visible in the photo? So I think that goes to prejudice, and that's assuming that the identification was reliable. As this Court also made clear in Green, that kind of evidence, I mean, the biggest factors that you're considering, it's improper to consider evidence of guilt because the single question is whether or not the identification was reliable. So, you know, the issue of the sweatshirt would certainly go to prejudice, but not towards the issue of whether the identification was reliable. And, you know, the state indicated that the Court of Appeal was, in fact, not misapplying or misapplying biggers by considering this evidence as far as instead for harmless error. But I would just note that the Court repeatedly says, this other evidence supports the reliability of Taylor's identification. That's the first sentence in the footnote four. The first sentence in the fourth paragraph of footnote four, the Court says circumstantial evidence also supports the reliability of Taylor's identification. So I think that's contrary to the Supreme Court's decision in Braithwaite, and certainly in Justice Stevens' concurring opinion. And so that gets us to de novo review, because it's contrary to clearly established federal law. I'm sorry, that's contrary to which, which, what case? That would be Braithwaite, as the district court found, which is not, I mean, that, that entire proposition is not, has not been disputed by, by the state. They just, they just take issue with whether or not the state court indeed considered that evidence in determining reliability. Did your Honor have a question? Go ahead. Okay. So I think another Supreme Court case, and to my knowledge, the only Supreme Court case granting relief on this issue, Foster v. California, bears some similarities too. There, the, the victim in that case was shown a, a lineup containing defendant and two other men. There were some problems with that lineup, but nonetheless, the, the victim said that he just, you know, thought it was, it was a robber. He would seem similar to, to the robber. Thereafter, a one-on-one interview between the victim and the defendant took place, which the Supreme Court found was improper. And then yet even more thereafter, the defendant was put in a second lineup. He's the only defendant to be placed in the second lineup. And the victim said that he was convinced, quote, convinced that it was him. And the Supreme Court noted that, you know, kind of the escalating unfairness of the procedures in the case, quote, produced the identification in violation of due process. And I would note a similar theme to this case. You know, we started off with the first lineup was very fairly administered. It didn't contain a photograph of defendant. Nonetheless, the victim identified somebody, tentatively at least. Two other fairly administered lineups were conducted and these contained a photograph of the defendant, which said none of the men looked like the driver. And it wasn't until the, you know, the defendant was sitting there in jail garb next to the previously identified co-defendant that the identification happened, and I would also note addressing the biggest factors to the degree of certainty. I think the, the failure to identify a petitioner in the lineups goes to that, that factor as well. And even once he, the victim identified petitioner in this case, you know, he focused on petitioner's lips. It, it, it's at odds with the degree of certainty in the other cases, like Biggers where the, the victim had, you know, no doubt whatsoever, knew immediately, was certain. And so if the court doesn't have any other questions, I'd like to reserve the balance of my time. Okay. Good morning. May it please the court. Deputy Attorney General Kristen Somerville for the respondent appellee. The state court's rejection of the suggestive identification issue is neither contrary to, nor an unreasonable application of clearly established federal law, the district court incorrectly applied a de novo standard of review because pursuant to Richter, the district court should have looked at the state court's determination and whether that was reasonable, not the state court's reasoning. But even, even looking at the state court's reasoning in the body of the opinion, the state court applied the factors in Biggers and Brathwaite correctly and dropping a footnote indicated that it was not using evidence pointing to appellant Taylor's guilt in determining that a suggestive identification was nonetheless reliable. It was an apparent illustration that any error was harmless. It was not using that as an extra factor in the Biggers. Does harmless error come into this equation at any point? Yes, Your Honor. Under Brecht, even if there was error in this case, this court can look at whether that error was harmless and it was in this case. However, before getting into harmless error, even applying a de novo standard of review in this case, the state court, the magistrate judge and the district court all correctly held that any, that the identification was sufficiently reliable to outweigh any suggestive, any corrupting effects of a suggestive procedure, the fact that the victim did not identify Taylor in a photo lineup directly after the commission of the offense is not dispositive here. And so several lineups, several for the lineups, right? There were three lineups, Your Honor. However, the first lineup, appellant's picture was not in the lineup and the second lineup, the photographs were a very poor quality and the victim stated that he was very tired when he was given the images, so it's possible. And there was a third lineup too, was there not? There was a third lineup, Your Honor. Uh, when he was presented with that lineup, he basically gave up and said, I don't know, I don't know who it is. Um, but under the totality of the circumstances, we are not to ignore that, are we? No, Your Honor. That's absolutely a factor that should be taken in consideration with the Biggers and Brathwaite factors. But looking at all the factors, it is clear that the identification was reliable. What about the fourth factor? The one we just heard about, uh, certainty of, uh, the degree of certainty at the preliminary hearing, the victim stated as the district court stated, it was direct and unqualified. He said, that's who it is. It was him the whole time. And he identified Taylor as the kidnapper. So he was sure of his identification. And more importantly, other factors also weighed in favor of finding, uh, the identification. He said he was sure, but after having not identified him in a lineup earlier, how much can we take him in his word? Your Honor, in this case, Or he may, he may have been mistakenly sure. That is a possibility. However, in this case, the victim hadn't seen Taylor until the preliminary hearing and unlike in the case that appellant cited in Green v. Loggins, uh, in that case, the victim actually ran into the defendant and didn't recognize him in person when he was at the jail house. Here, as soon as the victim saw appellant Taylor in person, he said that's him. And then his own jumpsuit? Yes, Your Honor. Next, next to the other guy with a no lunch jumpsuit. And boy, just came to him. Must, that must be the guy. Your Honor, preliminary hearings and trials are inherently suggestive. Uh, and, and yes, there is an element of suggestiveness in that. However, Well, it's, it's not, it's not like, uh, they couldn't have done a procedure without the jumpsuit, uh, right before court, right? They had the witnesses there, they had the witness there, they had suspect there, they could have put a couple of more people in the lineup or just in the room and say, hey, pick out the, pick out one of these guys, right? No handcuffs, no orange jumpsuit, no, no courtroom setting. Right, Your Honor. That would have been impractical at the time. I'm sorry? It would have been impractical to have done that at the time. Is that what you were getting at, Your Honor? I apologize. They could have done it, right? They could have done that. They could have, yes. Wouldn't have been that difficult. Perhaps, Your Honor. However, in this case, looking, I'm sorry? In this case, they didn't. In this case, they didn't. Exactly. He's there, he says, oh, it's the guy in the orange jumpsuit. Well, it's a good thing he didn't identify the bailiff in the uniform. You know, it's, uh, just maybe goes to show he can tell an orange jumpsuit from a sheriff's uniform, right? Your Honor, even if this wasn't. One of them had a gun too, you know, so he could tell that's not, that must not be him. Yes. Even though the identification was suggestive at the preliminary hearing, wearing the jumpsuit, it's all. I would call it more like compelling. Wouldn't you call it more than, just more than suggestive? Perhaps. However, it was. If he had a big sign on his head saying, this is the guy, it wouldn't have been much different, huh? Your Honor, no matter how suggestive it was, it was reliable in the end. He had over two hours to look at Taylor during the commission of the kidnapping. He demonstrated that he was very aware of what was going on because during this testimony, he gave very specific facts of everything that happened during the kidnapping. Was the last for the lineup, the one that he couldn't pick him out, uh, was those bad pictures too? No, Your Honor. That picture was taken from Taylor's, uh, driver's license photo. However, there could be a reason why the victim couldn't identify him. He was under stress. He said he was very tired. And, uh, he didn't have the orange jumpsuit. And he didn't have the orange jumpsuit on. I mean, that might've been the reason too, right? It could be. Uh, it could be. However, appellant would have this court hold that anytime a victim misidentifies his or her assailant directly after the commission of the It is necessarily unreliable. And that, that rule is just simply unworkable. It does go to the question of certainty, right? Which is one of the factors we have to, you know, he says I'm certain, but he says, I am certain under circumstances where, you know, there's certainly not much choice, you know, and, um, and after he has said, he's looked at pictures and said, I'm sorry, I, you know, I, I just don't, how do you become certain after you, does memory get better with time? Is that, is that, is that your experience? No, your honor. I think that the victim seeing Taylor for the first time again in person could have triggered his memory into identifying him. However, even if, even if this identification was unreliable and it was suggestive, any error was harmless because the jury was well aware of this defensive misidentification. And on top of that, other significant evidence pointed towards appellant's guilt. There was DNA evidence. His DNA, DNA was on the gun. It was on the beanie that the kidnapper pulled out of his pocket and told the victim to wear. And he was in possession of the brown hooded Echo sweatshirt. Uh, at the time he was arrested that morning, that was also seen on the kidnapper in the ATM photographs. So based on all of that evidence, a jury could still find that he, uh, he was the kidnapper, that his identity was of the kidnappers. Uh, additionally, the ADPA applied to the, um, the state court's determination that defense counsel is not ineffective. I'm aware that, uh, appellant did not bring that up. So unless the court would like to discuss that further. Uh, in that case, um, thank you, thank you, you had a little time reserve for a bottle. How do you deal with that DNA evidence? So there were a number of problems with the DNA evidence. I mean, the evidence showed that the victim wore the beanie that the kidnapper for a number of hours yet his DNA wasn't found on the, on the beanie petitioners was, but there, um, like we lay out in the briefs, there were innocent explanations for the, uh, DNA evidence on both the, um, beanie and the gun. And those innocent explanations, uh, center around. How do you have innocent explanations for DNA on a gun that's used in a crime? Certainly. I, and I think this, that kind of goes to the unique circumstances of the case where, um, petitioners close friend, the evidence showed that he and still well, who, you know, no one disputes was indeed the backseat robber were very close friends, uh, almost brothers. And so a reasonable jury could infer that they, you know, handled each other's clothing items and, uh, indeed their, their guns. Um, so I would, I would just like to point out, go into your question, just, uh, judge Kaczynski, um, the third lineup, um, in which the victim failed to identify petitioner. It was like a respondent said a DMV photograph. Um, but more importantly, it was a DMV photograph that was taken very close to the, uh, the crime. I think it was just within a matter of weeks of the crime, or, uh, I think a matter of three months. Before the, uh, the crime occurred. So it was a very recent photo. Um, and again, he was not like you pointed out, uh, wearing an orange jumpsuit at that time. Um, so unless the court has any further questions, I think, uh, fine. Thank you.
judges: Kozinski, O'scannlain, Bybee